## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**THEODORE W. HIGDON,**                    Case No. 1:18 CV 2447

      Petitioner,                             Judge Dan Aaron Polster

      v.                                      Magistrate Judge James R. Knepp II

**WARDEN CLARK SCOTT,**

      Respondent.                             **REPORT AND RECOMMENDATION**

### INTRODUCTION

*Pro se* Petitioner Theodore W. Higdon ("Petitioner"), a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Warden Clark Scott ("Respondent") filed a Motion to Dismiss (Doc. 8) and Petitioner filed an Opposition (Doc. 10). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated January 11, 2019). For the reasons discussed below, the undersigned recommends the Petition be dismissed as untimely-filed.

### FACTUAL BACKGROUND

For the purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, erroneous factual findings by the state court. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state

court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Ninth

District Court of Appeals set forth the following facts on direct appeal:

> {¶ 2} In 2010, Candice Higdon and her husband, Theodore W. Higdon, separated and began formal divorce proceedings. During the course of their marriage, the Higdons had twin children, a son and a daughter.

> {¶ 3} On Sunday, December 2, 2012, Mr. Higdon was exercising his companionship time with both of his children at his home. On that date, son and daughter were both 10 years old. Daughter and son went to bed in their respective bedrooms at around 9:30 p.m. Daughter testified that she had trouble falling asleep and asked her father if she could sleep with him. Mr. Higdon agreed. Daughter testified that Mr. Higdon smelled of alcohol and that his face looked pale that night.

> {¶ 4} Once in her father's bed, Daughter complained about being too warm. Mr. Higdon suggested that she remove some articles of clothing. Daughter testified that she removed her pants and bra, but kept on her shirt and underwear. Daughter further testified that Mr. Higdon eventually began talking about orgasms before exposing himself and asking her to touch his penis. Daughter refused. Mr. Higdon later licked his finger and asked his daughter twice if he could touch her vagina. Daughter refused both times. Mr. Higdon then asked his daughter if he could "kiss" her vagina. Daughter testified that she shrugged her shoulders and removed her underwear even though she felt uncomfortable. Mr. Higdon then performed oral sex on his daughter. Mr. Higdon then asked his daughter, "Do you want me to do it again?" Daughter testified that she again shrugged her shoulders and that her father again performed oral sex on her. Afterwards, daughter asked her father, "Do other dads do this?" Mr. Higdon responded, "Sometimes." Daughter then asked her father, "Did you do this to Mom?" He again responded, "Sometimes." Mr. Higdon then told his daughter, "We can do this again * * * next time."

> {¶ 5} Daughter then went to the bathroom to wipe her father's saliva from her vagina. She returned to her own bedroom and testified that she was crying because she was upset and because her stomach was hurting. Daughter then called for her father because she wanted to call her mother on the phone and tell her what had just happened. Mr. Higdon would not let his daughter call her mother. Mr. Higdon then told his daughter that she was having a bad dream. Daughter then went downstairs and fell asleep in the living room.

> {¶ 6} Daughter did not attend school the following day because her stomach was still hurting. Mrs. Higdon picked her children up from Mr. Higdon's house that evening. Daughter told her mother that night about the incident with her father. Mrs. Higdon immediately called the police.

> {¶ 7} Officer Josh Wilson of the Medina Police Department arrived at Mrs. Higdon's apartment and collected the clothes that daughter wore the prior night.

The police sent the clothing to the Ohio Bureau of Criminal Investigation and Identification (BCI) for forensic analysis. Detective Amy Kerr phoned Mrs. Higdon that night and arranged to meet with her and daughter the next day, December 4, 2012, at the Child Advocacy Center (CAC) for a medical examination and interview. Detective Kerr recommended that daughter receive counseling. Heeding Detective Kerr's advice, Mrs. Higdon took her daughter to several sessions with Dr. Barbara Michelson, a trauma specialist, and Dr. Cynthia Keck–McNulty, a mental health therapist. Detective Kerr later met with and interviewed Mr. Higdon at the police station. Mr. Higdon denied sexually abusing his daughter.

{¶ 8} Melissa Wilhelm, a forensic scientist at BCI, examined the daughter's clothing and found amylase, an enzyme found in saliva and other bodily fluids, on the crotch area of her underwear. Ms. Wilhelm took a swab from the area in question on the daughter's underwear for DNA analysis. Lindsey Nelsen–Rausch, a forensic scientist for BCI's forensic DNA unit, performed the DNA analysis and determined that the swab contained a mixture of DNA that is consistent with contributions from the daughter and Mr. Higdon. According to Ms. Nelsen–Rausch's testimony, the expected frequency of such an occurrence is 1 in 2,974,000,000 unrelated individuals. Julie Heinig, the assistant laboratory director at the DNA Diagnostics Center, analyzed Ms. Wilhelm's and Ms. Nelsen–Rausch's findings and agreed with their calculations and results.

*State v. Higdon*, 2015 WL 1882680 (Ohio Ct. App.).

## PROCEDURAL HISTORY

State Court Conviction

In December 2012, a Medina County Grand Jury indicted Petitioner on one count of rape in violation of Ohio Revised Code § 2907.02(A)(1)(b). (Ex. 1, Doc. 8-1, at 5). Through counsel, Petitioner entered a plea of not guilty on January 7, 2013. (Ex. 2, Doc. 8-1, at 6).

The case proceeded to jury trial on January 13, 2014. *See* Ex. 4, Doc. 8-1, at 10. At the close of the State's case, and again at the close of the defense's case, Petitioner moved for acquittal under Ohio Criminal Rule 29. *See id.* The court denied the motion each time. *See id.*

On January 16, 2014, the jury found Petitioner guilty as charged. (Ex. 3, Doc. 8-1, at 7-9). On January 21, 2014, the court sentenced Petitioner to 25 years to life in prison. (Ex. 5, Doc. 8-1, at 11-12).

3

Direct Appeal

Through new counsel, Petitioner filed a timely notice of appeal. (Ex. 6, Doc. 8-1, at 13). In his brief, he raised three assignments of error:

1. The trial court erred in the jury selection process whereas the Appellant was not afforded a jury of his peers[.]

2. The trial court erred in finding Appellant guilty of the charges because the finding was against the manifest weight of the evidence[.]

3. The trial court erred when allowing hearsay testimony from the mother of the victim by allowing her to read verbatim from a document she prepared based on the statement of C.H.

(Ex. 7, Doc. 8-1, at 24) (capitalization altered). The State filed a brief in opposition (Ex. 8, Doc. 8-1, at 56-89), and on April 27, 2015, the Ninth District Court of Appeals affirmed the judgment of the trial court (Ex. 9, Doc. 8-1, at 90-98); *Higdon*, 2015 WL 1882680. On May 7, 2015, Petitioner filed a *pro se* motion for reconsideration. (Ex. 10, Doc. 8-1, at 99-106). The State filed a brief in opposition (Ex 11, Doc. 8-1, at 107-11), and Petitioner replied (Ex. 12, Doc. 8-1, at 112-19). On June 10, 2015, the appellate court denied Petitioner's motion. (Ex. 13, Doc. 8-1, at 120).

On November 4, 2015, Petitioner filed a *pro se* notice of appeal and motion for leave to file a delayed appeal with the Ohio Supreme Court. (Exs. 14-15, Doc. 8-1, at 121-36). On December 30, 2015, the Ohio Supreme Court denied Petitioner's motion for delayed appeal. (Ex. 16, Doc. 8-1, at 137). Petitioner then filed a motion for reconsideration on January 11, 2016 (Ex. 17, Doc. 8-1, at 138-39), which the Ohio Supreme Court denied on March 9, 2016 (Ex. 18, Doc. 8-1, at 140).

First Federal Habeas Corpus Petition

Petitioner, acting *pro se*, filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 in the Northern District of Ohio on January 31, 2016. *Higdon v. Miller*, Case No. 16cv311 (N.D. Ohio) (Doc. 1).[1] Petitioner set forth five grounds for relief:

GROUND ONE: The trial court erred in the jury selection process whereas the Appellant was not afforded a jury of his peers.

GROUND TWO: The trial court erred in finding Appellant guilty of the charges because the finding was against the manifest weight of the evidence.

GROUND THREE: The trial court erred when allowing hearsay testimony from the mother of the victim by allowing her to read verbatim from a document she prepared based on the statement of C.H.

GROUND FOUR: The trial court erred when it failed to answer the jury's questions on what the definition of words used in the elements of the offense meant, causing the jury to lose their way when determining the innocence or guilt of the Defendant, denying the Defendant a fair trial.

GROUND FIVE: Trial counsel was ineffective for failing to use two existing pre[e]mptive strikes against the jury members when the jury pool did not represent a fair cross section of the community.

*Id.* at 7, 9, 11-12, 15, 16.

On April 7, 2016, Petitioner moved to voluntarily dismiss his habeas petition in order to exhaust his state court remedies. *Higdon*, Case No. 16cv311 (Doc. 9). The court marginally granted the motion on April 12, 2016. *Higdon*, Case No. 16cv311 (Doc. 10). On June 3, 2016, Petitioner

---

1. Pursuant to the federal prison mailbox rule, a *pro se* prisoner's pleading "is deemed filed when the inmate gives the document to prison officials to be mailed." *In re: Prison Litig. Reform Act*, 105 F.3d 1131, 1132 (6th Cir. 1997) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)). *See Higdon v. Miller*, Case No. 16cv311 (Doc. 1, at 19) (representing Petition was placed in the prison mailing system on January 31, 2016).

filed a motion to reopen the federal habeas case, and a motion to stay the case in order to exhaust his state court remedies. *Higdon*, Case No. 16cv311 (Docs. 11-12). In his motion to stay, Petitioner asserted he planned to "seek an Ohio Appellate Rule 26(B) application to reopen his appeal due to ineffective assistance of his Appellate Counsel's failure to raise issues in his original appeal". *Higdon*, Case No. 16cv311 (Doc. 12, at 1). On June 20, 2016, the court dismissed the case without prejudice, stating specifically:

> This action is dismissed without prejudice pending exhaustion of Petitioner's state court remedies. Petitioner may file a Motion to Reopen in this case upon exhaustion of his state court remedies, with equitable tolling of the statute of limitations for the period during which his post-conviction and related appeals are pending. *See Hargrove v. Brigano*, 300 F.3d 717, 720 (6th Cir. 2002).

*Higdon*, Case No. 16cv311 (Doc. 14).

<u>State Court Application for Reopening</u>

On June 29, 2016, Petitioner filed an untimely motion to reopen his direct appeal pursuant to Ohio Appellate Rule 26(B). (Ex. 19, Doc. 8-1, at 141-53). In it, he argued appellate counsel was ineffective for failing to raise three assignments of error on direct appeal:

1. Appellate counsel was ineffective for failing to raise on appeal that: the trial court erred when it failed to answer the jury's question on what the definition of words used in the elements of the offense meant, causing the jury to lose their way when determining the innocence or guilt of the Defendant, denying the Defendant a fair trial in violation of Ohio Constitution Art. I, Sec. 10, United States Constitutional Amend. 4, 5, 6 and 14.

2. Appellate counsel was ineffective for failing to raise on appeal that: trial counsel was ineffective for failing to object to the trial court's abuse of it's [sic] discretion, showing bias toward the Appellant by making numerous improper remarks to the jury that "this case is an "icky" one, denying Appellant a fair trial under the Ohio Constitution Art. I, Sec[t]. 10, 16 and United States Constitutional Amendment[s] 4, 5, 6 and 14.

3. Appellate counsel failed to raise on direct appeal trial court's abuse of discretion and counsel's ineffective representation for failing to object to: allowing prosecutor to ask prejudicial leading/rehearsed questions of witnesses, eliciting answers pre-arranged, introducing improper and prejudicial evidence, and

> making improper and inflammatory statements[,] denying Appellant of a fair trial, due process and equal protection of the laws in violation of Ohio Consti[tu]tion Art. 1, Sect[.] 10, 16; United States Constitutional Amendment[s] 5, 6, and 14.

(Ex. 19, Doc. 8-1, at 144, 146, 148) (capitalization altered). The State opposed (Ex. 20, Doc. 8-1, at 154-59), and Petitioner replied (Ex. 21, Doc. 8-1, at 160-62). On July 28, 2016, the appellate court denied Petitioner's application for reopening, finding Petitioner had not shown good cause for its untimely filing. (Ex. 22, Doc. 8-1, at 163-64).

On September 2, 2016, Petitioner filed a notice of appeal with the Ohio Supreme Court. (Ex. 23, Doc. 8-1, at 165-68). In his memorandum in support of jurisdiction, he set forth two propositions of law:

1. The Ninth District Court of Appeals abused their discretion by denying Mr. Higdon's application to reopen his direct appeal saying he did not present "good cause" for exceeding the 90 day filing limit of App. R. 26(B) by failing to state an adequate and independent state ground to bar reopening his direct appeal in violation of his Ohio Article 1, Section 10 and United States Constitutional Amendments 5, 6 and 14.

2. Was counsel on direct appeal ineffective for failing to raise issues that were stronger and more likely to show the wrongful conviction of Mr. Higdon in violation of the Sixth Amendment to the United States Constitution.

(Ex. 24, Doc. 8-1, at 169-88). The State filed a brief in opposition (Ex. 25, Doc. 8-1, at 191-216), and on November 23, 2016, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to Ohio Supreme Court Practice Rule 7.08(B)(4). (Ex. 26, Doc. 8-1, at 217).

### CURRENT FEDERAL HABEAS CORPUS PETITION

Petitioner filed the instant federal habeas Petition on October 18, 2018. *See* Doc. 1, at 62.[2]

In it, he raises thirteen grounds for relief:

---

2. Petitioner did not complete the section of the Petition certifying the date it was placed in the prison mailing system. *See* Doc. 1, at 61. Therefore, the undersigned uses postmarked date from the envelope. *See id.* at 62.

7

**GROUND ONE**: The DNA testing lab destroyed the DNA sample swatch. This prevented the defense from an independent test. Additionally, there was a third unknown contributor that has not been identified. This violates Higdon's Sixth Amendment rights, Due Process rights and Federal Rules of Evidence, as well as other constitutional rights.

**GROUND TWO**: The police department violated Higdon's rights by improperly collecting the evidence that was introduced at trial. The evidence was not collected in a manner that is consistent with the rule of evidence established by the U.S. Supreme Court. This fundamentally violates Higdon's constitutional rights, under the Sixth, Eighth, and Fourteenth Amendments, as well as other constitutional rights.

**GROUND THREE**: At the commencement of the trial the jurors were instructed on what definitions would be used as it relates to the elements of the statute governed by the Ohio Revised Codes. These definitions were fundamentally altered as a result of a question by the jury during deliberations by the trial judge. This violated Higdon's constitutional rights, under the Sixth[,] Eighth and Fourteenth Amendments, as well as other constitutional rights. This ground should also be viewed under the scope of legal sufficiency standard.

**GROUND FOUR**: Potential jurors from the jury pool did not show for voir dire, namely, a distinct group – in this case, males – did not show up for selection. The prosecutor's office offered no remedy for this. This fundamentally violated Higdon's Sixth Amendment rights, as well as other constitutional rights.

**GROUND FIVE**: The trial judge prejudiced and distorted the proceedings when empaneling the jury by using derogatory and inflammatory language when describing the type of criminal case before the court. This is a violation of Higdon's Sixth, Eighth and Fourteenth Constitutional rights and fundamentally violates Higdon's fair trial due process rights.

**GROUND SIX**: A juror kept falling asleep during critical points of testimony, creating jury misconduct. The judge during the trial noticed this and even said, 'it looks like we lost one'; this occurred multiple times and the judge did not offer any remedy by way of replacing the juror with an alternate, or other available legal solution. This violated Higdon's rights to a fair and impartial trial, thus violating his Sixth, Eighth and Fourteenth rights guaranteed by the constitution.

8

**GROUND SEVEN**: Hearsay testimony and double hearsay testimony was improperly introduced as a result of the trial judge allowing the witness to read an email delivered to the detective six months after the initial allegations were reported. The details of the email were not supported by other evidence. The jury was allowed to consider this evidence during deliberations which prejudiced both Higdon's rights to a fair trial and the jury's deliberations. This violates Higdon's rights to a fair trial and violates his due process rights guaranteed under the U.S. Constitution under the Sixth, Eighth and Fourteenth amendments. This also violates the rules of evidence regarding admissible and inadmissible evidence.

**GROUND EIGHT**: During closing arguments, the prosecutor in this case committed reversible errors. In one instance the prosecutor stated that Higdon had committed the offense on multiple occasions. This is not supported by the indictment, the evidence produced at trial nor any witness testimony. This admission of the prosecutor casts serious doubt on the correctness of the jury's verdict. On another occasion he criticized Higdon's defense counsel. In that instance he belittled Higdon's defense attorney by bringing up his education and mocked his performance during trial. The prosecutor's comments prejudicially affected the substantial rights of Higdon. The prosecutor resorted to unfounded and inflammatory attacks on [] Higdon and on Higdon's defense counsel violating Higdon's constitutional rights under the Sixth, Eighth and Fourteenth amendments.

**GROUND NINE**: Higdon's trial attorney did not object to the composition of the petit jury until after the jury was sworn and empaneled, this violated Higdon's Sixth amendment rights under the U.S. constitution.

**GROUND TEN**: In Higdon's case, there exists both factual sufficiency and legal sufficiency. Here – Ohio Revised Code § 2907.02 specifies the elements that must be proven at trial for a rape offense. Higdon was indicted under this Revised Code, subsection (A)(2). The ground for review is that the elements of this was not at all established nor proven at trial, that Higdon "purposely compels the other person to submit by force or threat of force". This is a basic standard that a prosecutor would need to prove. This violates Higdon's right

to a fair trial protected by the Sixth, Eighth and Fourteenth constitutional amendments.

**GROUND ELEVEN**: The Defendant, Higdon[,] was prevented from offering the testimony of a witness, (Pat Pyros) on his behalf violating Higdon's Sixth amendment rights under the U.S. constitution. During the testimony the judge decided to block the remaining testimony of Pat Pyros after a side bar communication. This prevented the defense from exercising a defense strategy to these allegations and presenting the jury with relevant testimony.

**GROUND TWELVE**: The state did not conclusively prove beyond a reasonable doubt that Higdon was the contributor of the DNA. Despite Higdon's DNA being present – which was a direct result of transference and the prosecutor's office did not prove that Higdon in fact directly contributed his DNA by violating Ohio Revised Code § 2907.02(A)(2). This violates Higdon's constitutional rights under the Sixth, Eighth and Fourteenth amendments.

**GROUND THIRTEEN**: Actual Innocence. Higdon is asserting actual innocence as a stand alone claim. Higdon did not in any way violate Ohio Revised Code § 2907.02(A)(2). This is a great injustice. Higdon when asserting the other grounds has substantially shown that there exists both cause and prejudice. This is a fundamental miscarriage of justice.

(Doc. 1, at 11-13).[3] In response, Respondent filed the currently-pending Motion to Dismiss (Doc. 8), and Petitioner opposed (Doc. 10).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and

---

3. Each ground for relief is accompanied by a lengthy statement of supporting facts, *see* Doc. 1, at 14-59, which the undersigned does not duplicate here.

quotation omitted). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## DISCUSSION

Respondent moves to dismiss the Petition, asserting it is time-barred. (Doc. 8). In response, Petitioner asserts that: (1) the district court should have stayed his first habeas case, rather than dismissing it without prejudice; (2) equitable tolling should excuse his untimeliness; and (3) he is actually innocent, which should excuse his untimeliness. (Doc. 11).

11

AEDPA Statute of Limitations

The AEDPA provides for a one-year statute of limitations during which a prisoner in state custody may file a petition for habeas relief in federal court. 28 U.S.C. § 2244(d)(1). The limitation period begins with any of the following scenarios, whichever is latest:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Cases become final for purposes of § 2244(d)(1)(A) when the time to file an appeal has expired. *Lawrence v. Florida*, 549 U.S. 327, 333 (2007). Although the statute of limitations is "not jurisdictional," it "effectively bars relief absent a showing that the petition's untimeliness should be excused based on equitable tolling and actual innocence." *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009).

Respondent correctly asserts that Petitioner's conviction because final for purposes of § 2244(d)(1)(A) at the latest on Monday, July 27, 2015 – 45 days after the Ninth District Court of Appeals denied the motion for reconsideration in Petitioner's direct appeal. *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i).[4] The one-year statute of limitations thus began to run the following day, July

---

4. The Ninth District Court of Appeals denied Petitioner's motion for reconsideration on June 10, 2015. (Ex. 13, Doc. 8-1, at 120). Forty-five days after this date is Saturday, July 25, 2015. Pursuant to Ohio court rules, Petitioner's appeal was due the following business day, Monday, July 27, 2015. Ohio S. Ct. Prac. R. 3.03(A)(3).

28, 2015. Absent tolling, the statute of limitations would have expired one year later, on July 28, 2016. The undersigned thus turns to whether Petitioner has shown a basis for tolling.

*Statutory Tolling*

A properly filed post-conviction petition can serve to toll the statute of limitations in habeas cases. 28 U.S.C. § 2244(d)(2). *See Evans v. Chavis*, 546 U.S. 189, 191 (2006). A state application for post-conviction relief is "properly filed" within the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings, such as those prescribing the time limits for filing." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). State courts are the final arbiters of whether a state collateral action is considered timely, and thus, properly filed. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). A state post-conviction petition rejected by the state court on timeliness grounds is not properly filed and, therefore, it cannot serve as the basis for statutory tolling. *Allen v. Siebert*, 552 U.S. 3, 5 (2007). Once the statute of limitations expires, state collateral review proceedings can no longer serve to avoid the time-bar. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) ("The tolling provision does not, however, revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run.") (internal quotation and citation omitted).

Petitioner's statute of limitations clock started on July 28, 2015 and ran for 99 days until November 4, 2015, when he filed a motion for leave to file a delayed appeal (Ex. 15, Doc. 8-1, at 124-36). *See Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001) ("[A]lthough the filing of the motion for delayed appeal may have tolled the running of the one-year statute, it did not cause the statute to begin running anew when the state court denied the motion."); *Board v. Bradshaw*, 805 F.3d 769, 771-76 (6th Cir. 2015). It then began to run again on December 31, 2015, the day after the Ohio Supreme Court denied Petitioner's motion (Ex. 16, Doc. 8-1, at 137), and ran for 11 days

13

until Petitioner filed a motion for reconsideration on January 11, 2016 (Ex. 17, Doc. 8-1, at 138-39). *See Sells v. Wolfe*, 77 F. App'x 299, 301 (6th Cir. 2003) (tolling the statute of limitations during the pendency of the petitioner's motion for reconsideration in the Supreme Court of Ohio); *Cf. Garner v. Gansheimer*, 2010 WL 547482, at *5 (N.D. Ohio) (noting that there is "some uncertainty as to whether a motion for reconsideration tolls the AEDPA statute of limitations," considering a motion for reconsideration filed in the Ohio Court of Appeals).[5] The statute remained paused until the Ohio Supreme Court denied reconsideration on March 9, 2016. (Ex. 18, Doc. 8-1, at 140). It then re-started the following day, and ran for an additional 111 days until June 29, 2016, when Petitioner filed an application to reopen his appeal pursuant to Ohio Appellate Rule 26(B). (Ex. 19, Doc. 8-1, at 141-53). The Ohio appellate court denied the motion on July 28, 2016 (Ex. 22, Doc. 8-1, at 163-64), and Petitioner filed a timely appeal to the Ohio Supreme Court (Exs. 23-24, Doc. 8-1, at 165-88). On November 23, 2016, the Ohio Supreme Court declined to accept jurisdiction of Petitioner's appeal. (Ex. 26, Doc. 8-1, at 217). At this point, Petitioner had 144 days remaining in his AEDPA statute of limitations. Thus, absent any other tolling, Petitioner's AEDPA statute of limitations expired on April 17, 2017. Petitioner did not file the pending Petition until October 18, 2018.

The earlier pendency of and actions taken within Petitioner's first habeas petition does not affect the outcome in this case. As set forth above, Petitioner filed his first habeas corpus Petition on January 31, 2016. The pendency of a federal habeas petition does not toll AEDPA's statute of limitations. *See Duncan v. Walker*, 533 U.S. 167, 181-82 (2001). On April 12, 2016, the district court granted Petitioner's motion to voluntarily dismiss his petition in order to exhaust his state

---

5. Respondent does not acknowledge the potential for tolling during the pendency of Petitioner's motion for reconsideration. For the reasons set forth below, however, the inclusion of this tolling period is not case dispositive.

court remedies. *Higdon*, Case No. 16cv311 (Doc. 10). On June 3, 2016, Petitioner moved to reopen

his habeas case, and requested that the district court stay the case while he exhausted his state court

remedies. *Higdon*, Case No. 16cv311 (Doc. 11). On June 20, 2016, the court dismissed "without

prejudice pending exhaustion of Petitioner's state court remedies." *Higdon*, Case No. 16cv311

(Doc. 14). The Court elaborated:

> Petitioner may file a Motion to Reopen in this case upon exhaustion of his state
> court remedies, with equitable tolling of the statute of limitations for the period
> during which his post-conviction and related appeals are pending. *See Hargrove v.*
> *Brigano*, 300 F.3d 717, 720 (6th Cir. 2002).

*Id.* Although Petitioner instituted his state court proceedings promptly thereafter, upon their

completion on November 23, 2016, he took no action until October 18, 2018 when he filed the

instant Petition.[6] The Petition thus remains time-barred unless Petitioner can show some basis for

equitable tolling.

*Equitable Tolling*

Pursuant to Sixth Circuit precedent, a habeas petitioner is entitled to "mandatory" equitable

tolling of the statute of limitations when he:

> (1) files a habeas petition including both exhausted and unexhausted claims before
> the statute of limitations expires, (2) returns to state court to address unexhausted
> claims within thirty days of the district court issuing a stay or dismissing the case,
> and (3) returns to federal court within thirty days of exhaustion.

*Bozsik v. Bagley*, 534 F. App'x 427, 430 (6th Cir. 2013) (citing *Griffin v. Rogers*, 399 F.3d 626,

635 (6th Cir. 2005) and *Palmer v. Carlton*, 276 F.3d 777, 781-82 (6th Cir. 2002)); *see also*

*Hargrove*, 300 F.3d at 721.

---

6. Furthermore, as Respondent points out, Petitioner did not, as the district court authorized, reopen
the same case, but rather filed a new Petition with additional claims not included in the first.

15

Here, Petitioner satisfied steps one and two in that he filed his initial federal habeas petition on January 31, 2016, *Higdon v. Miller*, Case No. 16cv311 (Doc. 1), and returned to state court nine days after the district court dismissed the case without prejudice (Ex. 19, Doc. 8-1, at 141-53). Petitioner, however, fails to satisfy the third step because he waited over twenty-two months after the Ohio Supreme Court issued the final ruling in his state case (Ex. 26, Doc. 8-1, at 217) (Order dated November 23, 2016) before returning to federal court (Doc. 1) (Petition postmarked October 18, 2018). As such, under *Palmer*, *Griffin*, and *Hargrove*, Petitioner has not shown entitlement to mandatory equitable tolling. *See Bozsik*, 534 F. App'x at 430-31 (petition time-barred because the petitioner failed to promptly return to federal court after completion of state court proceedings). Similarly, Petitioner has not shown an entitlement to equitable tolling based on the Court's original order, which stated: "with equitable tolling of the statute of limitations for the period during which his post-conviction and related appeals are pending", *Higdon*, Case No. 16cv311 (Doc. 14), because those proceedings only remained pending through the Ohio Supreme Court's November 23, 2016 order.

Petitioner has similarly not shown an entitlement to traditional equitable tolling. *See McMurray v. Scutt*, 136 F. App'x 815, 817 (6th Cir. 2005) ("If a petitioner fails to qualify for mandatory equitable tolling, he may still qualify for traditional equitable tolling."). AEDPA's one-year limitations period may be subject to equitable tolling, if a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v.*

16

*DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 750 (6th Cir. 2011).[7]

In support of his argument for equitable tolling, Petitioner asserts that he lacked actual knowledge of the filing requirement (but then asserts he knew "as a matter of initial law . . . about the AEDPA's one year statute filing requirement"), he was diligent in pursuing his rights, the length of his delay was "reasonable" and "necessary to pursue his rights", and that he was given inaccurate advice by inmate law clerks. (Doc. 11-1, at 7-8).

Petitioner's *pro se* status and/or ignorance of the law do not constitute "extraordinary circumstances" warranting equitable tolling. The Sixth Circuit has repeatedly held that "ignorance of the law alone is not sufficient to warrant equitable tolling." *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004); *Taylor v. Palmer*, 623 F. App'x 783, 789 (6th Cir. 2015); *Allen v. Bell*, 250 F. App'x 713, 716 (6th Cir. 2007); *see also Johnson v. United States*, 544 U.S. 295, 311 (2005) ("[w]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness"). Moreover, courts within this Circuit have found a petitioner's *pro se* status, lack of legal training, poor education, and/or limited law-library access, standing alone, are similarly insufficient. *See e.g., Hall*, 662 F.3d at 751 (petitioner's *pro se* status, limited law-library access

7. In his opposition, Petitioner asserts he is entitled to equitable tolling under the five-factor test set forth in *Dunlap v. United States*, 250 F.3d 1001 (6th Cir. 2001). (Doc. 11-1, at 6-9). Those factors are: (1) the petitioner's lack of [actual] notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) the petitioner's diligence in pursuing his rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. *Dunlap*, 250 F.3d at 1008. The Sixth Circuit, however, has concluded that the two-part test set forth in *Holland v. Florida*, 560 U.S. 631 (2010), "has replaced *Dunlap*'s five-factor inquiry as the governing framework in this circuit for determining whether a habeas petitioner is entitled to equitable tolling." *Hall*, 662 F.3d at 750. In any event, Petitioner is not entitled to equitable tolling under either test.

17

and lack of access to trial transcript were not sufficient to warrant equitable tolling); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012) ("Keeling's *pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse his late filing"); *Burden v. Bunting*, 2016 WL 5417834, at * 6 (N.D. Ohio) ("Courts have uniformly held that neither a prisoner's *pro se* status nor his lack of knowledge of the law constitute extraordinary circumstances justifying equitable tolling"); *Johnson v. LaRose*, 2016 WL 5462635, at * 10 (N.D. Ohio) ("A petitioner's *pro se* status and his unawareness of the law provide no basis for equitable tolling").

Similarly, courts have held that attorney error or mistaken reliance on the advice of a third-party is not an extraordinary circumstance justifying equitable tolling. *See Pigram v. Williams*, 182 F. Supp. 3d 861, 866 (N.D. Ill. 2016) ("The availability of a prison 'law clerk' did not relieve Pigram of his own responsibility to determine the deadline for filing a habeas petition and does not constitute grounds for equitably tolling the statute of limitations."); *Traverso v. Ryan*, 2015 WL 4606543, at *3-4 (D. Ariz.) (no tolling due to a "third-party ['s]" miscalculation of a deadline: "A petitioner['s] ... reliance on a third party is insufficient to justify equitable tolling." (citing cases)); *Hunter v. Galaza*, 2007 WL 2812176, at *6 (E.D. Cal.) (referencing "Petitioner['s] . . . own responsibility . . . to take reasonable steps to file his federal habeas petition with[in] one year").

Moreover, although Petitioner asserts that he was diligent, and that the length of his delay was "reasonable" and "necessary to pursue his rights", he fails to explain why he waited almost two years after the state court proceedings concluded to return to federal court.

18

Accordingly, under the circumstances presented, the Court finds Petitioner has failed to demonstrate either diligence, or that his *pro se* status, ignorance of the law, and reliance on third-party advice constitute extraordinary circumstances justifying equitable tolling.

*Actual Innocence*

A demonstration of actual innocence may also serve as a gateway to review of an otherwise time-barred claim, but a petitioner must present new evidence showing that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *See McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). For the actual innocence exception to apply, a petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup*, 513 U.S. at 324. The Supreme Court explained, however, that "tenable actual-innocence gateway pleas are rare" and "'[a] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329).

Petitioner asserts, based on two attached journal articles regarding DNA testing (Docs 11-3 and 11-4), that he is actually innocent. This argument fails for two reasons. First, these articles say nothing specific about Petitioner's case. *See, e.g., Williams v. Hoffner*, 2016 WL 2937130, at *7 (E.D. Mich.) ("Petitioner also cites newspaper articles describing Detroit police corruption in 2001 . . . in support of his actual innocence claim. Such articles, however, do not refer to Petitioner's case, nor do they establish his actual innocence of the crime at hand, which occurred several years earlier in 1994. Moreover, the fact that the police may have acted improperly in other

19

cases does not mean that they did so in this case."); *Parmer v. Premo*, 2018 WL 3094879, at *1-2 (D. Or.) ("It is doubtful whether academic studies exploring the unreliability of confessions qualify as "new reliable evidence" for the purposes of *Schlup v. Delo*'s gateway innocence showing. . . . The journal articles do not, and cannot, speak to Petitioner's actual innocence, but merely raise questions as to the reliability of confessions in the abstract. . . . Even if these studies qualify as "scientific evidence," they are not "exculpatory" because they do not relate to the specific facts of Petitioner's case or even provide information that would allow a factfinder to evaluate the reliability of Petitioner's confession.").

Second, and more importantly, Petitioner's conviction was also supported by the victim's own testimony that the offense occurred. *See Higdon*, 2015 WL 1882680, at *1. Thus, even if the Court were to assume *arguendo* that the attached articles provided any "evidence" of innocence, Petitioner would still not satisfy the standard of showing that "'no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329). Therefore, Petitioner cannot use the actual innocence gateway to excuse his untimeliness.

## CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the Court finds the Petition untimely, recommends the Respondent's Motion (Doc. 8) be granted, and the Petition be dismissed.

s/ James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time

WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).